UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SHIVA STEIN,

      Plaintiff,

  - against -

ACUITY BRANDS, INC.,

      Defendant.

---

C.A. No. 1:17-cv-06945-NGG-RER

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## ORDER TO SHOW CAUSE

**WOLF HALDENSTEIN**
 **ADLER FREEMAN & HERZ LLP**

Gloria Kui Melwani
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Attorneys for Plaintiff*

Dated: November 29, 2017

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT .............................................................................................................................. 3

    I.    Plaintiff Is Likely to Succeed on the Merits of Her Claims Because Proposal 5 Frustrates Fair Corporate Suffrage in Direct Violation of Rule 14a-9 ................................................ 3

    II.   Plaintiff Will Suffer Irreparable Harm ............................................................................. 7

    III.  The Balance of Hardships Tips Decidedly in Plaintiff's Favor ...................................... 10

    IV.  The Public Interest Will Be Served by the Preliminary Injunction ................................ 11

CONCLUSION ........................................................................................................................ 11

## **TABLE OF AUTHORITIES**

**Cases**

*Bertoglio v. Texas Int'l Co.*,
  488 F.Supp. 630 (D.Del.1980) .................................................................................................. 8

*Dillon v. Scotten, Dillon Co.*,
  335 F.Supp. 566 (D.Del.) aff'd, 453 F.2d 876 (3d Cir.1971) .................................................... 8

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ............................................................. 3

*Edelman v. Salomon*, 559 F. Supp. 1178, (D. Del. 1983) ............................................................. 8

*Greenlight Capital, L.P. v. Apple, Inc.*, No. 13 CIV. 900 RJS, 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013) .............................................................................................................................. 8, 10

*In re Pure Res., Inc., Shareholders Litig.*, 808 A.2d 421 (Del. Ch.2002) ...................................... 7

*In re Staples, Inc. Shareholders Litig.*, 792 A.2d 934 (Del. Ch.2001) .......................................... 7

*J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S. Ct. 1555, 1559, 12 L. Ed. 2d 423 (1964) ................. 4

*Kaufman v. Allemang*, 70 F. Supp. 3d 682 (D. Del. 2014) ........................................................... 6

*Koppel v. 4987 Corp.*, 167 F.3d 125 (2d Cir. 1999) ................................................................ 4, 10

*Mony Group, Inc. v. Highfields Capital Mgmt.*, L.P., 368 F.3d 138 (2d. Cir. 2004) ................. 7, 9

*Nat'l Elevator Cab & Door Corp v. H & B, Inc.*, 282 Fed. Appx. 885 (2d. Cir 2008) .................. 3

*ODS Technologies, L.P. v. Marshall.*, 832 A.2d 1254 (Del. Ch. 2003) ......................................... 7

*Resnik v. Swartz*, 303 F.3d 147 (2d Cir. 2002) .............................................................................. 4

*Resnik v. Woertz*, 774 F. Supp. 2d 614 (D. Del. 2011) ................................................................. 6

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ........................................................................... 3

*See Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F.Supp.2d 1141 (D.Kan.2001) ........... 10

*Seinfeld v. Becherer*, 461 F.3d 365 (3d Cir. 2006) ....................................................................... 4

*Seinfeld v. Gray*, 404 F.3d 645 (2d Cir. 2005) ................................................................................ 4

*Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003) ................................................................................. 6

*St. Louis Police Retirement System v. Severson*, 2012 WL 5270125 (N.D. Cal. Oct. 23, 2012) . 10

*Stein v. Raymond James Financial, Inc.*, C.A. No. 16-cv-379-DLI (E.D.N.Y Feb. 9, 2016) ........ 6

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) ............ 4

*United Paperworkers Int'l Union v. International Paper Co.*, 985 F.2d 1190 (2d Cir.1993) ........ 3

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) 4

*Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985) ........................................................................... 3

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ................................................................... 3

**Other Authorities**

C. Stephen Bigler, Seth Barrett Tillman, *Void or Voidable?-Curing Defects in Stock Issuances Under Delaware Law*, 63 Bus. Law. 1109 (2008) ..................................................................... 9

**Regulations**

SEC Rule 14(a)-9, 17 C.F.R. § 240.14a-9 ...................................................................................... 3

Plaintiff Shiva Stein respectfully submits this memorandum of law in support of her order to show cause for a preliminary injunction under Federal Rule of Civil Procedure 65.

## PRELIMINARY STATEMENT

Plaintiff, a stockholder of Defendant Acuity BrandS, Inc., a Delaware corporation ("Acuity Brands" or the "Company"), brings this motion to enjoin Acuity Brands from certifying or otherwise accepting any vote cast, by proxy or in person, for or on behalf of any Acuity Brands stockholder in connection with the third proposal ("Proposal 5") in Acuity Brands's proxy statement furnished on November 21, 2017 (the "Proxy Statement") or presenting Proposal 5 in the Proxy Statement for a stockholder vote at the January 5, 2018 annual meeting. Proposal 5 seeks to solicit stockholder approval of an amendment to the Amended and Restated Acuity Brands, Inc. 2012 Omnibus Stock Incentive Compensation Plan (the "Plan"). Plaintiff also seeks an injunction requiring Acuity Brands to comply with the disclosure rules promulgated by the United States Securities and Exchange Commission ("SEC") under the Exchange Act, including 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) ("Item 10(a)(1)") with regard to Proposal 5 to the Proxy Statement, which will require Acuity Brands to furnish a supplemental proxy statement concerning this proposal providing the information required by Item 10(a)(1). Specifically with regard to this proposal, Acuity Brands must provide "the material features of the plan[s] being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation." *Id.*

## STATEMENT OF FACTS

On November 21, 2017, Acuity Brands furnished its stockholders with the Proxy Statement. The Proxy Statement recommends that stockholders vote "for" six Company

proposals. Proposal 5 in the Proxy Statement requests that stockholders approve the Plan effective January 5, 2018.

Proposal 5 fails to provide sufficient – and federally required – information for Acuity Brands stockholders to understand how many participants there are in the plan or why they are eligible for such shares. Because Acuity Brands is requesting that stockholders provide their proxies in favor of Proposal 5, the Company is required to furnish stockholders with a proxy statement "containing the information specified in Schedule 14A." Item 10(a)(1) of Schedule 14A requires:

> Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>
> (a) Plans subject to security holder action.
>
> (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

The Proxy Statement at issue here has failed to disclose the approximate number of participants in each class of eligible participants and the bases of their participation for the Plan. Thus, Proposal 5 does not comply with the SEC regulations, and it does not give stockholders such as Plaintiff a full understanding of what they are voting for or why.

By this motion, Plaintiff respectfully asks the Court to enjoin Acuity Brands from certifying or otherwise accepting any vote cast, by proxy or in person, for or on behalf of any Acuity Brands stockholder in connection with Proposal 5 to the Company's Proxy Statement or presenting the Plan for a stockholder vote at the January 5, 2018 annual meeting. Plaintiff also seeks an injunction requiring Acuity Brands to comply with Item 10(a)(1).

# ARGUMENT

A preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure should issue where the movant shows that (1) she is likely to succeed on the merits of the claim; (2) she is likely to suffer irreparable injury in the absence of an injunction and remedies at law, such as monetary damages, are inadequate to compensate the movant for her injury; (3) the balance of hardships tips in the movant's favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)) (discussing preliminary injunction standard).

## I. Plaintiff Is Likely to Succeed on the Merits of Her Claims Because Proposal 5 Frustrates Fair Corporate Suffrage in Direct Violation of Rule 14a-9

"[T]o establish a likelihood of success on the merits of its litigation, [the movant] need only show that its probability of prevailing was 'better than 50 percent.'" *Nat'l Elevator Cab & Door Corp v. H & B, Inc.*, 282 Fed. Appx. 885, 888 (2d. Cir 2008) (quoting *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

Plaintiff is likely to succeed on the merits of her claims because Acuity Brands's conduct herein is in violation Rule 14a-9, 17 C.F.R. § 240.14a-9. Section 14(a) of the Exchange Act provides that "[i]t shall be unlawful for any person ... in contravention of such rules and regulations as the [SEC] may prescribe ... to solicit ... any proxy or consent or authorization in respect of any security ... registered pursuant to ... this title." Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). Rule 14a–9(a) promulgated thereunder provides that:

> No solicitation subject to this regulation shall be made by means of any proxy statement ... containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

3

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading....

17 C.F.R. § 240.14a-9.  "A fact is material for purposes of Rule 14a–9 '"if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."'" *United Paperworkers Int'l Union v. International Paper Co.*, 985 F.2d 1190, 1198 (2d Cir.1993) (quoting *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976))).  A private right of action under Rule 14a–9 is well established. *J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S. Ct. 1555, 1559, 12 L. Ed. 2d 423 (1964); *Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999).

In addition, "[the] omission of information from a proxy statement will violate [section 14(a) of the Exchange Act and Rule 14a–9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002) (Amon, J.); *see also Seinfeld v. Gray*, 404 F.3d 645, 650 (2d Cir. 2005) (same, citing *Resnik*); *see also Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006) ("The 'omission of information from a proxy statement will violate [§ 14(a) and Rule 14a-9] if … the SEC regulations specifically require disclosure of the omitted information in a proxy statement.'")

As noted above, Item 10(a)(1) is a rule of the SEC requiring specific disclosures in any proxy statement requesting stockholder approval of a compensation plan.  Proposal 5 of the Proxy Statement requested stockholder approval of an amendment to the Plan, which is intended to provide compensation.  Thus, Item 10(a)(1) requires that Acuity Brands "[d]escribe briefly the material features of the plan[s] being acted upon, identify each class of persons who will be

4

eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation." Acuity Brands has not provided such information in its Proxy Statement. Nowhere in the Proxy Statement does Acuity Brands provide the "approximate number of persons" in each class of persons who are eligible to participate in the Plan, and the Proxy Statement also fails to "state the basis of such participation" in the Plan.

With regard to the Plan, Proposal 5 merely states, under a heading for Eligibility:

> The Committee may grant awards under the Amended 2012 Plan to the Company's employees, non-employee directors and consultants. However, only employees will be eligible to receive "incentive stock options" under the Amended 2012 Plan.

Melwani Decl., Exh. 1 at 57. Nowhere in the Proxy Statement does Acuity Brands disclose the number of "employees, non-employee directors and consultants" of Acuity Brands. Thus, it is entirely unclear from the Proxy Statement how many participants will be awarded the authorized shares of Common Stock that stockholders are being asked to approve or the basis of their receipt of such awards. Plaintiff simply does not have any idea of the number of persons this Plan is intended to compensate or why they will be entitled to such equity compensation. Further, the definition of "Employee" is very broad as stated in the text of the Plan:

> "Employee" means any person providing services as an employee of the Company, a Subsidiary and/or an Affiliate. An Employee shall not include any individual during any period he or she is classified or treated by the Company, a Subsidiary or an Affiliate as an independent contractor, a Consultant, or an employee of an employment, consulting, temporary agency, or any other entity other than the Company, a Subsidiary and/or an Affiliate without regard to whether such individual is subsequently determined to have been, or is subsequently retroactively reclassified as a common-law employee of the Company, a Subsidiary and/or an Affiliate during such period. For the avoidance of doubt, a Director who would otherwise be an "Employee" within the meaning of this Section 2.22 shall be considered an Employee for purposes of the Plan.

5

Melwani Decl., Exh. 1 at A-3. The definitions for "Affiliate" and "Subsidiary" are also very broad:

> "Affiliate" means any entity in which the Company has at least a fifty percent (50%) equity interest and is designated as an Affiliate for purposes of the Plan by the Committee.
>
> "Subsidiary" means any present or future corporation which is or would be a "subsidiary corporation" of the Company as the term is defined in Code Section 424(f) [of Internal Revenue Code of 1986].

*Id.* at A-1, A-5; *See* Comp. ¶¶ 20-21.

As noted above, because this information is specifically required by the SEC regulations, it is per se material to stockholders, and its omission constitutes a violation of Rule 14a-9. Moreover, as the Third Circuit stated with regard to this specific regulation, allegations that the number of participants has been omitted from a proxy statement that requests approval of a compensation plan that will reward such participants "raise[s] important questions pertaining to material violations of the Securities Exchange Commission's Regulations." *Shaev v. Saper*, 320 F.3d at 384 n.10. The District of Delaware has echoed these sentiments in two recent decisions.

> The number of individuals in a particular class who are eligible to participate in the 2009 Plan would likely be considered material information by investors wanting to know the extent and impact of the 2009 Plan, and this information is treated as material under the regulations cited by Resnik. The court concludes that Resnik sufficiently pleads the materiality of the Proxy Statement's omission of how many consultants and advisors are covered by the 2009 Plan.

*Resnik v. Woertz*, 774 F. Supp. 2d 614, 631 (D. Del. 2011)

> [T]he 2012 proxy statement can be read to articulate several "classes" of persons eligible to participate in the proposed compensation plan, to wit, "officers, executives, and other employees of Dow or its subsidiaries and Dow's non-employee directors." (D.I. 14, ex. P at 52) Although the form 10–K materials described the "personnel count" of total employees, the approximate number of eligible participants in **each class** was nowhere articulated.
>
> **Conclusion.** At this stage of the proceedings, where there may be issues of fact

6

that need to be developed, I will grant the motion for reconsideration and deny defendants' motion to dismiss in this regard. An appropriate order shall issue.

*Kaufman v. Allemang*, 70 F. Supp. 3d 682, 699 (D. Del. 2014) (emphasis in original).

Importantly, the sheer size of Proposal 5, adopting the Plan allowing 1,647,185 shares for participants, demonstrates the necessity of disclosing how many persons are likely to receive such compensation and the bases of their participation.

As now-Chief Judge Irizarry held last year in *Stein v. Raymond James Financial, Inc.*, C.A. No. 16-cv-379-DLI (E.D.N.Y), a request that stockholders vote to award millions of shares for distribution to an unknown group of participants is "an important, important proposal," and it is a "material omission" not to provide the requisite information about the "people who are going to participate in this compensation plan and receive shares." Melwani Decl., Exh. 2 (Transcript of Oral Argument at 6:25 – 7:3 & 12:2-4).

## II. Plaintiff Will Suffer Irreparable Harm

"In passing Section 14(a), Congress sought to avoid a very particular harm – the solicitation of shareholder proxies without adequate disclosure. The SEC rules promulgated under Section 14(a) are intended to level somewhat the playing field for proxy contestants and to force disclosures that promote informed shareholder voting." *Mony Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 147-48 (2d. Cir. 2004).

Plaintiff will suffer irreparable harm if she is forced to vote on Proposal 5 without full and accurate information regarding participation in the Plan because "[t]he threat of an uninformed stockholder vote constitutes irreparable harm." *ODS Technologies, L.P. v. Marshall.*, 832 A.2d 1254, 1262 (Del. Ch. 2003). "[I]rreparable injury is threatened when a stockholder might make a tender or voting decision on the basis of materially misleading or inadequate information." *In re Pure Res., Inc., Shareholders Litig.*, 808 A.2d 421, 452 (Del. Ch.

7

2002). Generally, disclosure deficiencies cannot be remedied effectively by an "after-the-fact damages" case. *In re Staples, Inc. Shareholders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001). Thus, "[i]t is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected." *Id.* As the Second Circuit states,

> we do have a strong preference for an injunctive remedy over damages for violations of the proxy rules. The reasons for such a preference are sound: The courts should provide parties with no encouragement to sit on live claims until after a shareholder vote, hoping to collect damages and attorneys' fees from proxy violations that a registrant might willingly correct before the vote.

*Koppel*, 167 F.3d at 137 (citations omitted).

Moreover, voiding the Plan at a later date – after the uninformed votes take place on January 5, 2018 – would likely lead to further injury because this vote will allow Acuity Brands to immediately begin awarding compensation from the Plan; actions that would be difficult, if not impossible, for the Court to unwind. *See Greenlight Capital, L.P. v. Apple, Inc.*, No. 13 CIV. 900 RJS, 2013 WL 646547, at *9 (S.D.N.Y. Feb. 22, 2013) (finding irreparable harm because "if the Court were to issue an injunction at a later date, it is unclear whether or how Apple could unwind shareholder ratified amendments to its Articles—amendments that may trigger filings with the California Secretary of State, as well as multiple other states' agencies regarding the par value amendment").

To explain, the usual remedy for any corporate action taken on the basis of a proxy statement that violates the Section 14(a) is to void the transaction. *Edelman v. Salomon*, 559 F. Supp. 1178, 1184 (D. Del. 1983) ("The final relief, which this Court and the Delaware Courts have traditionally given in situations of this kind, has been a decree nullifying the corporate action taken on the basis of management's proxies") (citing *Dillon v. Berg*, 326 F.Supp. 1214 (D.

8

Del.), *aff'd*, 453 F.2d 876 (3d Cir.1971); *Bertoglio v. Texas Int'l Co.*, 488 F.Supp. 630, 663 (D. Del.1980); *Dillon v. Scotten, Dillon Co.*, 335 F.Supp. 566, 572 (D. Del.) *aff'd*, 453 F.2d 876 (3d Cir.1971); *Schnell v. Chris-Craft Industries, Inc.*, 285 A.2d 437 (Del. 1971)). But nullifying vote on Proposal 5 will be insufficient because the shares distributed from the Plan may be impossible to recoup once they are on the open market.

Should this stockholder vote proceed on January 5, 2018 without corrective disclosures and then later be voided by this Court, it may be impossible for this Court to unwind any awards that vest in the interim. The mechanism for undoing such transactions would be for Acuity Brands to make an "exchange offer" to stockholders who hold the invalid shares. An exchange offer "is an expensive and cumbersome procedure for a company with more than a few stockholders and *only provides a complete solution to the extent all stockholders participate*." C. Stephen Bigler, Seth Barrett Tillman, *Void or Voidable?-Curing Defects in Stock Issuances Under Delaware Law*, 63 Bus. Law 1109, 1151 n.44 (2008) (emphasis added).

> Generally, an exchange offer of this type takes the invalid (or purportedly invalid) class or series of stock off the market by asking the holders to voluntarily exchange their defective stock for a *valid* newly issued class or series of stock having characteristics identical to the class or series being surrendered, except with regard to validity. As part of this exchange, the holder of the defective stock gives the issuer a release of claims relating to the issuance to it of defective stock, which serves as independent consideration for the valid issuance of the new stock.

*Id.* (emphasis in original). Such a transaction would also require Acuity Brands to secure *valid* shares for distribution to its employees and consultants or to the people who have received these shares by having traded with these employees or consultants on the New York Stock Exchange. That would require Acuity Brands to ask its stockholders to vote in favor of such a share distribution – a vote that Acuity Brands cannot take for granted. This complicated, messy, possibly impossible process can only be avoided by the imposition of an injunction before the

9

January 5, 2018 stockholder vote.  Voiding the vote, and the shares that will be awarded as a result of it, *after* January 5, 2018, will very likely have irreversible consequences.  Thus, this vote will lead to irreparable injury if the required disclosures are not provided before the annual meeting.

### III. The Balance of Hardships Tips Decidedly in Plaintiff's Favor

The balance of hardships here tips decidedly in favor of Plaintiff.  Without corrective disclosures regarding Proposal 5, Plaintiff will be deprived of the fundamental right that Section 14(a) is supposed to guarantee: the right to "informed shareholder voting." *See Mony Group*, 368 F.3d at 147-48 ("the SEC rules promulgated under Section 14(a) are intended to level somewhat the playing field for proxy contestants and to force disclosures that promote informed shareholder voting"). "A fully informed shareholder vote in compliance with Section 14(a) of the Securities Exchange Act [] is in the best interests of shareholders and the shareholding public generally." *St. Louis Police Retirement System v. Severson*, 2012 WL 5270125, at *6 (N.D. Cal. Oct. 23, 2012).  Moreover, an uninformed vote on Proposal 5 could easily lead to invalid Acuity Brands shares entering the public market – a situation that may be impossible to unwind.

By contrast, Defendant will suffer little or no harm from being required to amend and distribute a more expansive proxy statement containing the full and accurate information regarding the participation in the Plan.  Defendant should not be heard to suffer harm from having to comply with SEC regulations that are known, public, easily-ascertainable, and which are constructed for the benefit of stockholders. *See Greenlight Capital*, 2013 WL 646547, at *10 ("Apple strenuously objects that an injunction would mark 'an unprecedented interference [into] the exercise of corporate suffrage by one of the most respected companies in America.' (Tr. 32:3–5.) But Apple fails to acknowledge that this 'interference' occurred more than ten years ago

10

when the SEC adopted the 'unbundling' rules; the Court now simply requires compliance with the clear dictates of those rules…").

### IV. The Public Interest Will Be Served by the Preliminary Injunction

Here, the public interest is served by the issuing of an injunction because an injunction will prevent violations of the securities laws. *See Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F.Supp.2d 1141, 1150 (D. Kan. 2001) ("assuming the existence of materially misleading information, a full disclosure of such information, prior to any vote based thereon, will best serve the shareholding public"); *see also St. Louis Police Ret. Sys.*, 2012 WL 5270125, at *6; *see also Koppel*, 167 F.3d at 137 (expressing Second Circuit's preference for injunctive remedy with regard to proxy statement disclosure issues). Also, issuing invalid Acuity Brands shares and allowing such shares to be traded on the New York Stock Exchange is not in the public interest.

The violations to securities laws at issue here can be corrected quickly and effectively by this Court's grant of injunctive relief.

### CONCLUSION

For the forgoing reasons, Plaintiff's motion should be granted in all respects, along with such other and further relief as the Court deems just and proper.

Dated: November 29, 2017

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s/ *Gloria Kui Melwani*
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Attorneys for Plaintiff*